# 20-12957

# United States Court of Appeals

*for the*

# Eleventh Circuit

WILBUR HUGGINS,

*Plaintiff/Appellant,*

— v. —

LUEDER, LARKIN & HARKIN, LLC,

*Defendant/Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
CASE NO: 1:19-cv-04333-CAP
(Honorable Charles A. Pannell)

## INITIAL BRIEF OF APPELLANT

MIRANDA N. HANLEY
SMITH, WELCH, WEBB AND WHITE
280 Country Club Drive, Suite 300
Stockbridge, Georgia 30281
(770) 389-4864

*Counsel for Plaintiff/Appellant*

## **CERTIFICATE OF INTERESTED PERSONS**

**Huggins v. Lueder, Larkin & Hunter, LLC Docket No. 20-12957-H**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, Appellant hereby files this Certificate of Interested Persons and Corporate Disclosure Statement. The following persons or entities, to the best of Appellant's knowledge, have an interest in the outcome of this matter:

  Wilbur Huggins

  Lueder, Larkin, Hunter, LLC

  John T. Lueder

  Caitlin Berry

  Hanley, Miranda

  Orion G. Webb

  Smith, Welch, Webb & White, LLC

This 30th day of September, 2020.

       **SMITH WELCH**
       **WEBB & WHITE, LLC**

       /s/ *Miranda N. Hanley*
       Miranda N. Hanley
       Georgia Bar No. 451274
       Attorney for Appellant

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant states that oral argument is desired. Oral argument would benefit the Court in allowing Appellant to further explain how the District Court placed the wrong burdens on the parties and made improper inferences to grant summary judgment.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF AUTHORITIES ..........................................................................iv

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION...........................................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................2

STATEMENT OF THE CASE..........................................................................3

    1.    INTRODUCTION.................................................................3

    2.    COURSE OF THE PROCEEDINGS AND DISPOSITION
        BELOW .........................................................................3

    3.    STATEMENT OF RELEVANT FACTS ...........................6

    4.    STANDARD ON REVIEW...............................................18

SUMMARY OF ARGUMENT ..........................................................................19

ARGUMENT ...............................................................................................20

    I.    The trial court erred in placing the wrong burden on the
       parties, inferring that the developer's employees who hired
       LLH and claimed to be the board of Huggins' HOA were
       authorized to do so ..................................................................20

        i.    The Question of REGI Financial's Title for
           Development or Sale................................................27

        ii.    The Declarant did not appoint the purported board.................29

        iii.    REGI Financial was divested of title before attempting
           to appoint the individual who hired LLH ..................30

    II.    The trial court erred by inferring LLH's intent to litigate its
       action against Huggins and LLH's motivation for dismissing
       the same ...................................................................................33

III.    The trial court erred in putting the burden on Huggins rather than LLH to provide evidence in support of the remaining claims.................................................................................39

IV.    The trial court erred by making determinations of fact that are the province of the Jury ....................................................................44

CONCLUSION ......................................................................................47

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144 (1970)...............................................................................22, 28

*Alabama Farm Bureau Mut. Cas. Co.,*
    606 F.2d 602 (5th Cir. 1979) ................................................................35, 44

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)...............................................................................19, 24

*Barnes v. Finnegan Enterprises,*
    150 Ga. App. 430 (1979) ..............................................................................32

*Boafo v. Hospital Corp. of Am.,*
    177 Ga. App. 75, 338 S.E.2d 477 (1985) ....................................................32

*Carter v. CACH, LLC,*
    No. 1:14-CV-2786-MHC-JKL, 2016 WL 11581050 (N.D. Ga.
    Apr. 7, 2016)..................................................................................44, 45, 46

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)............................................................................*passim*

*Clark v. Coats & Clark, Inc.,*
    929 F.2d 604 (11th Cir. 1991) ..........................................................*passim*

*Clemons v. Dougherty County,*
    684 F.2d 1365 (11th Cir. 1982) ...................................................................24

*Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.,*
    114 F. Supp. 3d 1342 (N.D. Ga. 2015).......................................34, 44, 45, 46

*Country Greens Village One Owner's Assn. v. Meyers,*
    158 Ga. App. 609, 281 S.E.2d 346 (1981) ...................................................42

*Frazier v. Absolute Collection Serv., Inc.,*
    767 F. Supp. 2d 1354 (N.D. Ga. 2011).........................................................21

*Graham v. State Farm Mut. Ins. Co.,*
    193 F.3d 1274 (11th Cir. 1999) ...................................................................20

*Hairston v. Gainesville Sun Pub. Co.,*
    9 F.3d 913 (11th Cir. 1993) .........................................................................18

*Hall v. Town Creek Neighborhood Ass'n*,
    320 Ga. App. 897 (2013) ................................................................41, 42, 43

*Hunt v. Cromartie*,
    526 U.S. 541 (1999)...........................................................................29, 35

*Impossible Elecs. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*,
    669 F.2d 1026 (Former 5th Cir. 1982) ....................................................22, 39

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
    456 U.S. 844 (1982)...................................................................................34

*Jenkins v. Judith Sans Internationale, Inc.*,
    175 Ga. App. 171 (1985) ............................................................................32

*Jeter v. Credit Bureau, Inc.*,
    760 F.2d 1168 (11th Cir. 1985) ...........................................................*passim*

*Jones v. Brown*,
    108 Ga. App. 776, 134 S.E.2d 440 (1963) ..................................................28

*Josendis v. Wall to Wall Residence Repairs, Inc.*,
    662 F.3d 1292 (11th Cir. 2011) ..................................................................35

*Keller v. Dravo Corp.*,
    441 F.2d 1239 (5th Cir. 1971) ....................................................................22

*Kuria v. Palisades Acquisition XVI, LLC*,
    752 F. Supp. 2d 1293 (N.D. Ga. 2010)........................................................34

*LeBlanc v. Unifund CCR Partners*,
    601 F.3d 1185 (11th Cir. 2010) ..................................................................20

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...................................................................................24

*McGee v. Patterson*,
    323 Ga. App. 103 (2013) ............................................................................43

*Reese v. Herbert*,
    527 F.3d 1253 (11th Cir. 2008) .............................................................24, 40

*Tippens v. Celotex Corp.*,
    805 F.2d 949 (11th Cir. 1986) ..............................................................26, 40

*Tipton v. Bergrohr GMBH–Siegen*,
    965 F.2d 994 (11th Cir. 1992) ....................................................................40

*United States v. Fid. Capital Corp.*,
    888 F.2d 1344 (11th Cir. 1989) ....................................................32

*Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*,
    695 F.2d 1294 (11th Cir. 1983) ....................................................24

## Statutes & Other Authorities:

15 U.S.C. § 1692d.................................................................................1, 3, 40

15 U.S.C. § 1692e ................................................................................*passim*

15 U.S.C. § 1692f..................................................................................1, 3, 40

15 U.S.C. § 1692f(1) ................................................................................40

15 U.S.C. § 1692k(d) .................................................................................1

28 U.S.C. § 1291 ........................................................................................1

28 U.S.C. § 1331 ........................................................................................1

Fed. R. App. P. 3 ........................................................................................1

Fed. R. Civ. P. 56 ..................................................................3, 21, 22, 35

Fed. R. Civ. P. 56(a).........................................................................18, 38

Fed. R. Civ. P. 56(c).................................................................................19

Fed. R. Civ. P. 56(c)(4).............................................................................30

Georgia Jurisprudence, Property, § 6:80 ...............................................42

Local Rule 56.1 .................................................................................39, 40

O.C.G.A. § 44-3-220.................................................................................42

O.C.G.A. § 44-14-60.............................................................................5, 28

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Appellee removed this action to the District Court because the action alleges violations of the Fair Debt Collection Practices Act (FDCPA). Jurisdiction was appropriate pursuant to 28 U.S.C. § 1331, and 15 U.S.C. § 1692k(d). Relevant to this appeal, the Appellee violated 15 U.S.C. §§ 1692d, e, and f of the FDCPA by misrepresenting the legal status of debts, failing to have substantial attorney involvement prior to filing an action against him, filing an action against Appellant with no actual intent to pursue the case against him, seeking to recover unauthorized debts, and abusive collection practices.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1291 and Rule 3 of the Federal Rules of Appellate Procedure because the District Court granted the Appellee's motion for summary judgment on or about July 8, 2020, which was a final order that disposed of all of the parties' remaining claims. (Doc 55)[1]. A notice of appeal was timely filed on August 6, 2020. (Doc. 61).

---

[1] Citation is made to the record by document number followed by page number as that page number appears in the header generated by the district court's electronic filing system.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

(1)     Whether the District Court erred in granting summary judgment when it made an inference on a material fact regarding the legal status of debt, and in placing the burden on the nonmovant to rebut that inference.

(2)     Whether the District Court erred in making an inference in the movant's favor regarding intent and motivation where these questions were dispositive on an element of the nonmovant's claim that was summarily adjudged.

(3)     Whether the District Court erred in placing the burden on the nonmovant to provide evidence in support of claims prior to the movant showing in support of summary judgment through affidavits or other evidence that there is no actual dispute as to the material facts.

(4)     Whether the District Court erred in making determinations of fact in order to grant summary judgment.

## STATEMENT OF THE CASE

### 1.    INTRODUCTION.

Appellant Wilbur Huggins' First Amended Complaint (Doc 8) asserts claims against Appellee Lueder, Larkin & Hunter, LLC ("LLH") for violations of the Fair Debt Collection Practices Act ("FDCPA"), specifically, 15 U.S.C. §§ 1692d, e, and f. This is an appeal of an order granting summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In so doing, the District Court placed the wrong burdens on the parties, made inferences in LLH's favor regarding the legal status of the debts LLH attempted to collect from Huggins; made impermissible inferences against Huggins regarding LLH's intent to litigate its action against him at the time that it filed the collection action and LLH's motivation for dismissing the case against Huggins;  put the burden on Huggins to provide evidence in support of his remaining claims rather than on LLH to establish that there was no dispute of material fact on those claims; and made determinations of fact that are the province of the jury. Each is addressed in turn.

### 2.    COURSE OF THE PROCEEDINGS AND DISPOSITION BELOW.

This case was initiated by the Appellant Huggins on September 17, 2019 in Henry County State Court. (Doc 1). LLH removed Appellant's complaint, and several other substantially similar complaints against LLH by plaintiffs represented by the same counsel. (Doc 4). LLH filed a motion for summary judgment on

October 17, 2019. (Doc 5). LLH also filed a motion for a stay pending an order on the motion for summary judgment. (Doc 6). LLH filed motions for summary judgment in all related cases, which were rendered moot after plaintiffs amended their complaints. On November 19, 2019, LLH then filed new motions for summary judgment, but three of the cases settled. (Doc 27-1) (Doc 4 at 3).

LLH's argument for Summary Judgment against Huggins is that "LLH never engaged in any act or omission prohibited by the FDCPA and is entitled to summary judgment as a matter of law." (Doc 27-1 at 4). In support of this position, LLH argues on the question of whether Huggins' Homeowner's Association lacked directors on the basis "Plaintiff cannot meet [the burden of showing the debt at issue was invalid], and LLH shows the debt was valid." (Doc 27-1 at 4). With the exception of that argument, there is no argument as to the remaining claims that Plaintiffs cannot provide evidence in support of their claims. (Doc 27-1 *passim*). Instead, LLH's remaining arguments are premised on evidence it provides and the assertion that evidence entitles LLH to summary judgment. (Doc 27-1 *passim*). Huggins responded on December 10, 2020, providing evidence supporting the inference that the developer who hired LLH to sue Huggins lacked legal authority because it did not take title to property within Huggins' neighborhood for the purpose of development and/or sale, so it did not qualify as the Declarant under the terms of the instrument:

In this instance, the entity with the recorded title of Declarant is REGI
Financial. [Doc. 28-2]. However, the Declarant must have title to a
portion of the Pine Grove Property Defining Declarant as "any
successor, successor-in-title, or assign who takes title to any portion of
the property described on Exhibit "A" **for the purpose of
development and/or sale**". [Doc. 5-3, p. 9]. As described in greater
detail in the Facts section, *supra*, REGI Financial has never held title
to any Pine Grove property, so it did not qualify as the Declarant
under the terms of the instrument, and it lacked the authority to
appoint the Board.

(emphasis added) (Huggins Doc 30 at 9). In its Reply Brief, LLH argued for the

first time that pursuant to O.C.G.A. § 44-14-60, one of the subsidiaries of the

developer who hired LLH had legal title to property in Huggins' neighborhood

pursuant to holding certain security deeds, which meant that it held property, and

because a different subsidiary intended to develop the properties or resell them,

this proved questions of fact regarding the "purpose of development and/or sale"

question that Huggins raised in his First Amended Complaint and Response to

LLH's motion for summary judgment. Accepting LLH's legal conclusions, on

April 24, 2020 Magistrate Judge Justin S. Anand recommended summary

judgment based in large part on LLH's security deed argument, and otherwise took

Huggins to task for failing to provide evidence in support of his claims. (Doc 48).

Huggins objected to the Report and Recommendation on May 8, 2020. (Doc 51).

LLH filed a response to the objection on May 20, 2020. (Doc 52). The District

Court overruled Huggins' objections and granted summary judgment on July 8, 2020. (Doc 55).

## 3. STATEMENT OF RELEVANT FACTS

In this action, Huggins alleges that LLH violated the FDCPA by (1) misrepresenting the legal status of debts related to the Pine Grove Homeowner's Association because no legitimate board existed to authorize collection actions or hire LLH, (2) failing to have substantial attorney involvement prior to filing the action against him, (3) filing an action against Huggins with no actual intent to pursue the case against him, (4) seeking to recover unauthorized debts, and (5) abusive collection practices. (Doc 1).

The HOA's authority to require "the payment of past due assessments under the Declaration is [subject to the requirement] that a duly appointed board had to authorize collection, and in particular litigation to collect the payment of the same." (Doc 30) citing (Doc 28-1 at 19). "The By-Laws make clear that it is the Board's duty to collect assessments, hire the personnel necessary to carry out the rights and responsibilities of the Association, and bring lawsuits." (Doc 30) citing (Doc 28-1, p. 58, ¶ 3.18).

It is undisputed that in order to be the "Declarant", one must be either The Knight Group, Inc. (hereinafter "TKG") or "any successor, successor-in-title, or assign who takes title to any portion of the [property in the neighborhood] for the

purpose of development and/or sale and who is designated as the Declarant in a Recorded instrument executed by the immediately preceding Declarant..." (Doc 28-1 at 7). Thus, the Declaration clearly requires <u>possessory</u> title for the purpose of development or resale in one who can be a Declarant.

It is also undisputed that a purported "Assignment of Declarant's Rights" "in favor of REGI Financial" was executed on February 28, 2012 by TKG, yet questions of fact remain unanswered regarding whether REGI Financial could have held security deeds, which do not convey possessory title, for the purpose of development and/or sale") (Doc 19-1). Although the parties agree on the basic facts in this case, they disagree upon the proper inferences to be drawn from the recorded Assignment.

In its order, the trial court refuses to consider whether the purported Declarant, REGI Financial, held title to any portion of property in the Pine Grove subdivision for the purpose of development or sale, relying—seemingly entirely—on a recorded assignment of Declarant's Rights as evidence that REGI Financial was the Declarant for Pine Grove:

> However, in response to the plaintiffs' unsupported assertion that "REGI Financial . . . . did not qualify as the Declarant under the terms of the instrument," Resp. to Summ. Judgment [Doc No. 30] at 9, the defendant replied that the Assignment of Declarant's Rights, [Doc No. 28-2], explicitly gave REGI Financial "all of Declarant's right, title, interest and power as Declarant arising under the Governing

Documents." Clearly, the defendant did set forth evidence that RGEI [sic.] Financial was the Declarant. The plaintiffs just failed to rebut it.

(Doc 55 at 17). Yet, Huggins made the following argument in his response to LLH's motion for summary judgment:

> In this instance, the entity with the recorded title of Declarant is REGI Financial. [Doc28-2]. However, the Declarant must have title to a portion of the Pine Grove Property Defining Declarant as "any successor, successor-in-title, or assign who takes title to any portion of the property described on Exhibit "A" for the purpose of development and/or sale". [Doc 28-1, p. 7]. As described in greater detail in the Facts section, *supra*, REGI Financial has never held title to any Pine Grove property, so it did not qualify as the Declarant under the terms of the instrument, and it lacked the authority to appoint the Board.

(Doc 30 at 9). This fact was specifically pleaded in the complaint, stating "[a]t no time prior to Defendant's collection practices described herein was title of 'Declarant' transferred to Silverstone, or any other entity **with vested title to property in the neighborhood for the purpose of development or resale**, which is required to exercise the powers and duties of the Declarant to appoint a board of the Pine Grove Homeowners' Association." (emphasis added) (Doc 8 at 3-4 ¶ 11). While the court held otherwise, LLH concedes in its reply to Huggins' objection to the R&R that Huggins made this argument:

> Plaintiffs begin by arguing that LLH did not present evidence that RL REGI Financial, LLC held title for the purpose of development and/or sale. Plaintiffs made that exact argument in their summary judgment response brief, and LLH addressed that argument in its reply brief.

(Doc 52 at 9).

Further, the record provides no direct evidence or affidavits from anyone with direct knowledge supporting the proposition that REGI Financial, or any other purported Declarant, appointed Stephen Guttery to the Board of Pine Grove, as alleged in LLH's Brief in Support of its motion for summary judgment. (Doc 27-1 at 7). In support of its legal conclusions, LLH cites non-specifically to the Affidavit of Mr. Lueder. (Doc 27-1 at 7-8). Mr. Lueder's Affidavit states that Guttery, speaking of numerous Rialto Capital developments, informed him that the Declarant status in the communities had been properly assigned and that "he was, in fact, on the boards and authorized to hire LLH." (Doc 27-3 at 5). Mr. Lueder claims that an employee of Rialto Capital, despite the fact that Rialto Capital is not identified in any documents as the Declarant, claimed to have been appointed by who he characterized as a Declarant, purportedly RL REGI Financial, and then hired LLH in 2013. (Doc 27-3 at 5-6 ¶¶ 9-10). However, direct evidence in the record indicates that LLH admitted to Huggins' neighbor that it was taking its orders directly from "The Builder", rather than the Declarant. (Doc 31-1 ¶ 20).

The assignments of Security Instruments from REGI Financial to RL REGI-GA KGI, LLC (hereinafter "REGI-GA") in March of 2012 undeniably divested REGI Financial of any title to Pine Grove properties. (Doc 30-1 at 1-2, 4-5, 7-8, 10-11, 13-14, 16-17, 19-20, and 22-23). It is undisputed that on March 28, 2012, Assignments of Security Instruments were filed assigning rights of REGI

9

Financial, a Florida LLC to REGI-GA, a Georgia LLC. (Doc 30-1 at 1-2, 4-5, 7-8, 10-11, 13-14, 16-17, 19-20, and 22-23). Exhibits A to the Security Deeds describe the conveyed property as being deeds with stated purpose of "Deed[s] to Secure Debt". (Doc 30-1at 3, 6, 9, 12, 15, 18, 21, and 24). REGI-GA foreclosed these security Deeds on May 1, 2012. (Doc 30-2 *passim*). There is no evidence in the record of title passing from REGI-GA to Rialto Capital Advisers, LLC (hereinafter "Rialto Capital") or REGI Financial. There is no evidence in the record to indicate that REGI-GA or REGI Financial ever took any steps to appoint Rialto employee Stephen Guttery to the Board of the HOA. **Most importantly, there is no evidence in the record that REGI Financial or TKG ever executed an instrument to convey the title of Declarant to REGI-GA**. On this evidence, the appropriate inference is that without authority to do so, Rialto Capital had its employees act as a purported board.

The appropriate inference from the facts in evidence is that the Association lacked authority to initiate the action against or engage LLH to collect unpaid assessments from Huggins. (Doc 28-1 at 56, ¶ 3.18). To determine otherwise is to ignore the corporate division between Lennar Corporation and its subsidiaries. Yet, LLH advocates to treat the developer entities as the same person:

> Lennar Corporation… is one of the nation's largest homebuilders, a provider of financial services and, through its Rialto Investments segment, an investor in distressed real estate assets… Lennar's SEC

filings show that its co-registrants include RL REGI Financial, LLC and Rialto Capital Advisers, LLC. As stated above, RL REGI Financial, LLC became the Declarant in May 2012. Lennar and its related entities have been involved in the Pine Grove subdivision since 2012.

(Doc 27-1 at 7-8). This is the purported evidence in the record that the developer, Rialto Capital or the separate entity REGI Financial, held title to HOA property and had been assigned Declarant when LLH was hired by Guttery, an employee of Rialto.

Additionally, the undisputed facts are that REGI Financial did not hold title to any Pine Grove property after 2012, even in the legal fiction sense that it held title under the Security Deeds. As LLH states it, "assessments (or any other association action) [are] invalidated [where] a declarant [has] not appoint[ed] directors." (Doc 16 at 5). Therefore, even if the trial court's inference that the Security Deeds were held for the purpose of development or sale were permitted to stand, the appropriate inference is that REGI Financial was only the Declarant until the Security Deeds were assigned to REGI-GA in March of 2012, which undeniably divested REGI Financial of any title to Pine Grove properties. (Doc 30-1 at 1-2, 4-5, 7-8, 10-11, 13-14, 16-17, 19-20, and 22-23).

To attack the allegation that it filed the suit with no intent to litigate, LLH created, filed, and cited to one piece of evidence, the affidavit of Mr. Lueder. (Doc 27-1 at 24-25). Based solely on this Affidavit, the trial court inferred that LLH did

not "make the decision to settle the claims against Plaintiff Huggins and dismiss the claims against Marbury and Parson. Rather, because the HOA could no longer afford its $30,000 balance owed to LLH, it instructed LLH to dismiss its lawsuits..." (Doc 48 at 27-28). Neither LLH's Motion nor Mr. Lueder's Affidavit mention LLH's intent to litigate. (*See* Doc 27-1; and Doc 27-3). In fact, the word "intent" is nowhere to be found. *Id. passim*. Despite the absence of a single sentence addressing LLH's intent to litigate at the inception of the action against Huggins, the trial court determined that there was "no genuine dispute as to whether LLH settled and dismissed the claims against plaintiffs merely because of their appearance in the lawsuits" so "no reasonable jury could determine that LLH filed its lawsuits against Plaintiffs without the intent to litigate its claims." (Doc 48 at 27).

At the summary judgment stage, the proper inferences must be made in Huggins' favor. LLH claims to have terminated the HOA as a client due to nonpayment, but there is no evidence of when the termination occurred. (Doc 27-3 at 15, ¶ 30). The Affidavit of Mr. Lueder states that LLH ultimately fired the HOA as a client due to the HOA not paying LLH's legal fees. (Doc 36 at 18-19). Huggins directed the trial court to multiple lawsuits filed by LLH in Henry County State Court between October 24, 2018 and November 28, 2018. (Doc 30 at 13; Doc 30-3). The documents filed by LLH in the state court cases, as well as in their

affidavits and time entries, show that LLH failed to take any action in furtherance of litigation for several months after their initial filing. (*See* Docs 27-3; 30 at 13). LLH refused to participate in discovery, getting the HOA sanctioned in one case and itself sanctioned in another. (Docs 44-2 and 44-3). The inference from these facts, in Huggins' favor, is that LLH had no intent to litigate these actions, or the claim against Huggins, as LLH refused to participate in the relatively low cost depositions and other discovery in his neighbors cases, and dismissed then withdrew from them. "As the summer progressed and Plaintiff's attorney, Mr. Webb, began to cause the legal fees to skyrocket (as shown in his own affidavits in the underlying lawsuits), the HOA, rather than LLH, made the decision to not go forward in its cases. LLH then fired the HOA for nonpayment. (Doc 36 at 19). Thus, the undisputed evidence from LLH is that it continued to represent the HOA until Huggins' neighbors hired counsel and defended the cases, which increased the cost of litigation, directly leading LLH to "fire" the HOA as a client.

LLH sought attorney's fees of $1,577.00 and costs of $356.96. (Doc 27-2 at ¶ 60). In addition to its costs, LLH sought miscellaneous charges in the amount of $315. (Doc 36 at 20). LLH obtained an affidavit from a Bradford Pasquali, stating that the miscellaneous charges were costs incurred by the management company as part of collections. Additionally, while there is no evidence of a board authorizing the same, LLH obtained judgement on an accelerated assessment. (Doc 27-3 at 40).

Additionally, a review of the March 21, 2019 Judgment that LLH obtained without notice of the hearing to Huggins shows that "costs" were already accounted for as $369.15, so the "Misc Charges" are represented as a different item. (Doc 27-3 at 40).

LLH shows no record of meetings or resolutions after 2012, and Huggins' neighbor swore that no such meetings occurred in recent history. (Doc 31-1 ¶ 11). The Declaration requires that notice of the meetings be sent to residents, so Huggins' neighbor would know if they had occurred. (Doc 28-1 at 50, ¶ 2.5). If properly appointed, the Board would still have to operate as a normal HOA Board, of which there is no evidence after 2012. The subject Bylaws require board action to authorize collection of assessments or fees, and to pursue legal actions. (Doc 28-1 at 56-7). Additionally, at Section 3.24, "the Board shall have the power to impose reasonable monetary fines…" (Doc 28-1 at 60). Clearly these acts require a board.

LLH has paralegals take all prelitigation actions and draft complaints prior to attorney involvement. (Doc 27-3 at 43-44). According to LLH's Attorney's Fees Ledger, paralegals drafted and sent the initial demand letter to Mr. Huggins, prepared a notice of lien, conducted a title search, prepared a follow up collection demand letter, reviewed bankruptcy records, skip traced Mr. Huggins, prepared discovery requests, determined jurisdiction, venue, and service, and determined

amounts due, and drafted the complaint, all before any attorney interacted with the file. (Doc. 27-3 at 43-44). The attorney spent just over half an hour reviewing the pleadings, verifying title for ownership, venue, and service, then reviewing the file and ledger prior to filing the complaint. (Doc 27-3 at 43).

At the summary judgment stage, the question of fact should be construed in Huggins' favor that thirty-five minutes is not enough time to determine whether the Board has passed resolutions to authorize the purported miscellaneous charges, or otherwise verify the information provided by the creditor, especially when an attorney is also reviewing the pleadings, verifying title for ownership, venue, and service, then reviewing the file and ledger prior to filing the complaint. (Doc 27-3 at 43).

On April 24, 2020, Magistrate Judge Justin Anand entered a Report and Recommendation for all three remaining cases, recommending that summary judgment be granted, and made the following findings of fact:

1. Plaintiffs Wilbur Huggins, Latonya Marbury, and Melisha W. Parson are members of the Pine Grove Homeowners Association, Inc. ("HOA"). (Doc 48 at 6).

2. The HOA was created by the "Declaration of Covenants, Conditions, and Restrictions, for Pine Grove Homeowners Association, Inc.," which provides that its Declarant has the sole right to appoint directors onto the HOA's board until one of three triggering events occurs: (1) 60 days after one hundred percent of the subdivision lots have been built and sold; (2) December 31, 2020; or (3) the Declarant voluntarily relinquishes that right.

LLH SMF (Huggins) [27-2] at ¶¶ 6–7. None of these events have yet occurred. Id. at ¶ 8.
(Doc 48 at 6-7).

3. Upon the HOA's inception, The Knight Group, Inc. ("TKG") occupied the role of Declarant. *Id.* at ¶¶ 6, 16. On February 28, 2012, in an instrument recorded in Henry County land records on May 10 of that year, TKG purported to assign its rights as Declarant to RL REGI Financial, LLC ("REGI"), a housing company co-registered in the State of Georgia co-registered with two others: Lennar Corporation and Rialto Capital Advisers, LLC.3 *Id.* at ¶¶ 17, 20–21. Thereafter, at various times in 2013, Rialto employees Stephen Guttery and Corbitt Woods were listed as the CEO of the HOA in its filings with the Georgia Secretary of State's Office. *Id.* at ¶ 29.
(Doc 48 at 7).

4. LLH is a law firm that represents community associations; as relevant here, its law practice includes the collection of unpaid assessments from delinquent homeowners. *Id.* at ¶ 1.
(Doc 48 at 7).

5. On September 30, 2013, four days after meeting in-person, Guttery informed John Lueder, an attorney with LLH, that the HOA would be hiring LLH because several homeowners had refused to pay their assessments. Id. at ¶¶ 23, 25–26.
(Doc 48 at 7-8).

6. at ¶ 27. Upon inquiry by Lueder, Guttery stated that both he and Woods were Declarant-appointed officers of the HOA. *Id.* at ¶¶ 53–55. Guttery additionally informed Lueder that Woods was the President of the HOA. *Id.*
(Doc 48 at 7-8).

7. Per its arrangement with Guttery and Woods, LLH purported to represent the HOA in collections matters in 2013 and 2014.5 *Id.* at ¶ 28. LLH again represented the HOA in October 2017 when the HOA pleaded nolo contendere in response to citations by the City of Stockbridge, Georgia for various code violations.6 *Id.* at ¶¶ 32–33. The plea was signed by Jonathan Ulsaker, whose signature indicated that he was the Director of the HOA and

who was listed at the time as the HOA's CEO on its filings with the Georgia Secretary of State's office. *Id.* at ¶¶ 34–36.
(Doc 48 at 8-9).

8. LLH's arrangement with the HOA continued in August 2018, when it sent several homeowners, including Plaintiffs, collection letters seeking payment of allegedly delinquent annual assessments due to the HOA. LLH SMF [27-2][27-2][12-2] at ¶ 2. While the R&R makes this statement of "fact", it acknowledges throughout the R&R that Appellant disputes that the HOA actually hired LLH, but that LLH was hired by Rialto Employees who were not properly appointed to the Board of Pine Grove HOA.
(Doc 48 at 9).

9. In October and November 2018, LLH, purportedly representing the HOA, filed separate complaints against Plaintiffs in the State Court of Henry County seeking payment of the alleged debts with an interest rate of ten percent per annum. *Id.* at ¶ 2; LLH SMF (*Huggins*) [27-2] at ¶¶ 66–67.
(Doc 48 at 9).

10. LLH sought payment of the attorney's fees and costs it billed to the HOA in each of the respective actions against Plaintiffs.
(Doc 48 at 9).

11. Against Marbury, LLH sought attorney's fees of $1,577.00 and costs of $356.96. LLH SMF (*Marbury*) [27-2] at ¶ 57.
(Doc 48 at 9).

12. In addition to its costs, LLH sought miscellaneous charges in the amounts of $315 from Marbury, Exh. (*Marbury*) [29-8] at 2. At footnote 7, the R&R took issue with Marbury for failing to establish the existence of this fee, but as LLH neither raised the lack of this fee in its motion, nor established the lack of a dispute regarding same, Marbury did not have a duty to put evidence of the same into the record.
(Doc 48 at 9).

13. LLH additionally sought $125 from Plaintiff Marbury in the form of a fine. Exh. (*Marbury*) [29-8] at 2. At footnote 8, the Court takes issue with Marbury for failing to establish the existence of the fine in the record, but

given that the LLH did not establish the nonexistence of this fine in the record, Marbury had not duty to do so.
 (Doc 48 at 9-10).

14. After falling behind on its own payments to LLH, the HOA instructed LLH to dismiss at least two of its remaining lawsuits against Pine Grove homeowners, including Plaintiffs Marbury and Parson. LLH SMF (*Marbury*) [27-2] at ¶¶ 72–73, 75; Notice of Dismissal (*Parson*) [15-3] at 1. (Doc 48 at 10).

These finding were adopted by the District Court. (Doc 55 at 3). The extent that the Court determined that Huggins did not object to Magistrate Judge Anand's inferences of fact, this was in error. (Doc 51 *passim*).

## 4.    STANDARD ON REVIEW

This Court reviews motions for summary judgment de novo, applying the same legal standard employed by the district court in the first instance. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). Summary judgment should only occur in the absence of genuine issues of material fact where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing that it is entitled to summary judgment. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The nonmovant must then "go beyond the pleadings" and present competent evidence in the form of

affidavits, answers to interrogatories, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotation omitted); see Fed. R. Civ. P. 56(c). With all doubts resolved in favor of the nonmoving party, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor. *Id.* at 255.

## SUMMARY OF ARGUMENT

The District Court erred in four respects, (1) it placed the wrong burdens on the parties, making inferences in LLH's favor regarding the legal status of the debts LLH attempted to collect from Huggins; (2) made impermissible inferences against Huggins regarding LLH's intent to litigate its action against him once it filed the collection; (3) put the burden on Huggins to support evidence in support of his remaining claims rather than on LLH to establish that there was no dispute of material fact on those claims; and (4) made determinations of fact that are the province of the jury. Each is addressed in turn.

## ARGUMENT

### I. The trial court erred in placing the wrong burden on the parties, inferring that the developer's employees who hired LLH and claimed to be the board of Huggins' HOA were authorized to do so.

As this Court has explained, "[t]he party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying [materials] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. "The movant[] can meet this burden by presenting evidence showing there is no dispute of material fact, **or** by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof." (emphasis added) *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1281-82 (11th Cir. 1999).

The claims at issue here were brought under the Fair Debt Collection Practices Act, which was enacted to eliminate abusive, deceptive, and unfair debt collection practices by debt collectors. *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1190 (11th Cir.2010) (per curiam). A prevailing FDCPA plaintiff, must establish that

> (1) she has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

*Frazier v. Absolute Collection Serv., Inc.,* 767 F.Supp.2d 1354, 1363 (N.D.Ga.2011) (punctuation omitted). LLH argued for summary judgment on the question of whether it engaged in a prohibited act under the FDCPA. In this action, Huggins alleges that LLH violated the FDCPA by (1) misrepresenting the legal status of debts related to the Pine Grove Homeowner's Association because no legitimate board existed to authorize collection actions or hire LLH, (2) failing to have substantial attorney involvement prior to filing the action against him, (3) filing an action against Huggins with no actual intent to pursue the case against him, (4) seeking to recover unauthorized debts, and (5) abusive collection practices.

> The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Celotex* did not change the general rule. *Celotex* simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden. Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial.

*Id.* at 608. In *Clark*, this Court described the "unfortunate" "problem" "not uncommon in our circuit" where a district court "misplaced the burdens in ruling

on [a] motion for summary judgment." *Id.* at 606. The appellee had argued that "in attempting to withstand summary judgment, not only does the non-moving party have the burden of proving the existence of every element essential to his or her case, but the non-moving party must produce sufficiently probative evidence upon which a jury could reasonably find in its favor." *Id.* at 609.

The Court "set out the basic contours of summary judgment law" by explaining the holding in *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970) discussing the proper allocation of burden under Fed.R.Civ.P. 56. *Id.* In *Adickes,* the movant did not meet its initial burden, so the respondent "was not required to come forward with suitable opposing affidavits" or other evidentiary material. *Adickes,* 398 U.S. at 160. "Our circuit adheres to the *Adickes* rule." *Clark*, 929 F.2d at 607, citing *Impossible Elecs. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (Former 5th Cir.1982) (the movant "bears the exacting burden of demonstrating that there is no actual dispute as to any material fact in the case"; "the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly carried its burden"). To do so, the movant must provide specific affidavits that pierce the allegations of the pleadings. See *Keller v. Dravo Corp.*, 441 F.2d 1239, 1245 (5th Cir. 1971).

LLH argued that Huggins cannot present evidence in support of his § 1692e claims based on lack of board authority, but on all other theories of recovery attempted to show that there is no dispute of material fact. Yet, the appropriate inferences of fact with regard to the question of board authority is that the title of Declarant never properly passed to the developer who hired LLH, the Declarant did not appoint the purported board, and that any purported appointment occurred after title to HOA property had been transferred away from the purported Declarant, divesting it of authority to appoint a board. Responding to LLH's argument that it was appointed by a legitimate board, authorized to enforce the subject Declaration, Huggins showed that a pre-requisite to the HOA's authority to require "the payment of past due assessments under the Declaration is that a duly appointed board had to authorize collection, and in particular litigation to collect the payment of the same." (Doc 30) citing (Doc 28-1, p. 19). Huggins further pointed out that "[t]he By-Laws make clear that it is the Board's duty to collect assessments, hire the personnel necessary to carry out the rights and responsibilities of the Association, and bring lawsuits." (Doc 30) citing (Doc 28-1, p. 58, ¶ 3.18).

The party seeking summary judgment bears the burden of demonstrating that there is no genuine dispute as to any material fact, and all evidence and all reasonable factual inferences therefrom must be viewed in a light most favorable to

the party opposing the motion. *Clemons v. Dougherty County*, 684 F.2d 1365, 1368 (11th Cir.1982). The evidence and all inferences drawn from facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The movant "continues to shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact, and the court must satisfy itself that the burden has been satisfactorily discharged." *Reese v. Herbert*, 527 F.3d 1253, 1268-69 (11th Cir. 2008). A motion for summary judgment is an argument to a court that under the facts, there is no way the other side can win. The <u>moving</u> party must point to a material issue of fact on which there is no dispute that entitles it to judgment. *Clark*, 929 F.2d at 609. An issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. *Anderson,* 477 U.S. at 248. It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.,* 475 U.S. at 587. Even "where the parties agree on the basic facts but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983).

It is undisputed that in order to be the "Declarant", one must be either The Knight Group, Inc. (hereinafter "TKG") or "any successor, successor-in-title, or assign who takes title to any portion of the property described on Exhibit "A" for the purpose of development and/or sale and who is designated as the Declarant in a Recorded instrument executed by the immediately preceding Declarant..." (Doc 28-1 at 7). Thus, the Declaration clearly requires <u>possessory</u> title for the purpose of development or resale in one who can be a Declarant.

It is also undisputed that a purported "Assignment of Declarant's Rights" "in favor of REGI Financial" was executed on February 28, 2012 by TKG, yet questions of fact remain unanswered regarding whether REGI Financial could have held security deeds, which do not convey possessory title, for the purpose of development and/or sale") (Doc 19-1). Although the parties agree on the basic facts in this case, they disagree upon the proper inferences to be drawn from the recorded Assignment of Declaration.

In its order, the trial court refuses to consider whether the purported Declarant, REGI Financial, held title to any portion of property in the Pine Grove subdivision for the purpose of development or sale, relying—seemingly entirely on a recorded assignment of Declarant's Rights as evidence that REGI Financial was the Declarant for Pine Grove:

> However, in response to the plaintiffs' unsupported assertion that "REGI Financial . . . . did not qualify as the Declarant under the terms of the instrument," Resp. to Summ. Judgment [Doc No. 30] at 9, the defendant replied that the Assignment of Declarant's Rights, [Doc No. 28-2], explicitly gave REGI Financial "all of Declarant's right, title, interest and power as Declarant arising under the Governing Documents." Clearly, the defendant did set forth evidence that RGEI [sic] Financial was the Declarant. The plaintiffs just failed to rebut it.

(Doc 55 at 17). This conclusion was error because it drew an impermissible inference in favor of the movant, and incorrectly ignored the evidence that REGI Financial did not hold title to Pine Grove Property for the purpose of development or resale, and because—even following this inference--REGI Financial still did not hold title to Pine Grove property in 2013 when LLH claims to have been hired, or after. In doing so, the Court identified a genuine issue of material fact that forecloses summary judgment. See *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir.1986) ("The District Court shall consider all evidence in the record when reviewing a motion for summary judgment—pleadings, depositions, interrogatories, affidavits, etc.—and can only grant summary judgment if everything in the record ... demonstrates that no genuine issue of material fact exists.") (internal quotation marks omitted).

i.   The Question of REGI Financial's Title for Development or Sale

At the summary judgment stage, the question of fact precludes judgment because the inference must be made in Huggins' favor that REGI Financial never actually held title for the purpose of development or sale:

> In this instance, the entity with the recorded title of Declarant is REGI Financial. [Doc28-2]. However, the Declarant must have title to a portion of the Pine Grove Property Defining Declarant as "any successor, successor-in-title, or assign who takes title to any portion of the property described on Exhibit "A" for the purpose of development and/or sale". [Doc 28-1, p. 7]. As described in greater detail in the Facts section, *supra*, REGI Financial has never held title to any Pine Grove property, so it did not qualify as the Declarant under the terms of the instrument, and it lacked the authority to appoint the Board.

(Doc 30 at 9). This fact was specifically pleaded in the complaint, stating "[a]t no time prior to Defendant's collection practices described herein was title of 'Declarant' transferred to Silverstone, or any other entity **with vested title to property in the neighborhood for the purpose of development or resale**, which is required to exercise the powers and duties of the Declarant to appoint a board of the Pine Grove Homeowners' Association." (emphasis added) (Doc 8 at 3-4 ¶ 11). While the court inexplicably held otherwise, LLH concedes Huggins made this argument:

> Plaintiffs begin by arguing that LLH did not present evidence that RL REGI Financial, LLC held title for the purpose of development and/or sale. Plaintiffs made that exact argument in their summary judgment response brief, and LLH addressed that argument in its reply brief.

(Doc 52 at 9). Respectfully, the trial court was simply wrong in ignoring the argument which both parties agree was made by Huggins.

Because REGI Financial held only security Deeds to HOA property when the purported assignment was recorded, the logical inference is that REGI Financial only ever held legal title to the HOA property, and never held title to the property for the purpose of development or sale. The treatment of a security deed as title is a legal fiction pursuant to O.C.G.A. § 44-14-60 which does not include a possessory right.

> The owner of property who conveys by a bill of sale to secure a debt owing by him to a creditor is in the same legal situation as one who purchases property from a vendor who retains title until the purchase price is paid; in both situations the right of possession depends upon compliance with the terms of the contract. The interest of the creditor extends no further than his special property, which is the amount of the unpaid debt. Likewise, the interest of the debtor extends no further than his own special property or equity in the subject matter, which is a right of possession during his compliance with the provisions of the security instrument, and a right to a reconveyance of title upon the discharge of his obligations thereunder.

*Jones v. Brown*, 108 Ga. App. 776, 781, 134 S.E.2d 440, 445 (1963).

Having identified this missing material evidence, the Court mistakenly construes the question against the respondent, but the *Adickes* Rule requires that, having identified this material question of fact, the summary judgment cannot be granted. *Adickes,* 398 U.S. at 160. It is impermissible reversable error to draw inferences in favor of the movant and against the nonmovant to support granting

summary judgment. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). The trial court's refusal to consider Huggins' argument, which both parties agree was made, and inference against Huggins on the question of REGI Financial' s title for development or sale was reversable error.

ii.  the Declarant did not appoint the purported board

Further, the trial court's holding that LLH was hired by the "Declarant" stems from a hearsay legal conclusion in a self-serving affidavit filed by LLH claiming that an employee of Rialto Capital, who is undisputedly not the Declarant, told LLH that he was appointed by the Declarant: "Upon inquiry by Lueder, Guttery stated that both he and Woods were Declarant-appointed officers of the HOA. *Id.* at ¶¶ 53–55. Further, direct evidence in the record is that LLH admitted to Huggins' neighbor that it was taking its orders directly from "The Builder", rather than the Declarant. (Doc 31-1 ¶ 20).

The record provides no direct evidence or affidavits from anyone with direct knowledge supporting the proposition that REGI Financial, or any other purported Declarant, appointed Stephen Guttery to the Board of Pine Grove, as alleged in LLH's Brief in Support of its motion for summary judgment. (Doc 27-1 at 7). In support of its legal conclusions, LLH cites non-specifically to the Affidavit of Mr. Lueder. (Doc 27-1 at 7). However, a review of the same shows that this claim is unsupported by personal knowledge, but rather unsubstantiated hearsay of the sort

forbidden by Fed. R. Civ. P. 56(c)(4), which states that "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Despite this, Mr. Lueder's Affidavit states that Guttery informed him that the Declarant status in the communities had been properly assigned and that "he was, in fact, on the boards and authorized to hire LLH." (Doc 27-3 at 5). This hearsay legal conclusion fails to even identify who Guttery believed to be the Declarant, or when the purported appointment occurred.

     iii.    REGI Financial was divested of title before attempting to appoint the individual who hired LLH.

The assignments of Security Instruments from REGI Financial to REGI-GA in March of 2012 undeniably divested REGI Financial of any title to Pine Grove properties. (Doc 30-1 at 1-2, 4-5, 7-8, 10-11, 13-14, 16-17, 19-20, and 22-23). It is undisputed that on March 28, 2012, Assignments of Security Instruments were filed assigning rights of REGI Financial, a Florida LLC to REGI-GA, a Georgia LLC. (Doc 30-1 at 1-2, 4-5, 7-8, 10-11, 13-14, 16-17, 19-20, and 22-23). Exhibits A to the Security Deeds describe the conveyed property as being deeds with stated purpose of "Deed[s] to Secure Debt". (Doc 30-1at 3, 6, 9, 12, 15, 18, 21, and 24). REGI-GA foreclosed these security Deeds on May 1, 2012. (Doc 30-2 *passim*).

There is no evidence in the record of title passing from REGI-GA to Rialto Capital or REGI Financial. There is no evidence in the record to indicate that REGI-GA or REGI Financial ever took any steps to appoint Rialto employee Stephen Guttery to the Board of the HOA. **Most importantly, there is no evidence in the record that REGI Financial or TKG ever executed an instrument to convey the title of Declarant to REGI-GA**. Since that date, there has been no Declarant because REGI Financial never held title to any Pine Grove property. On this evidence, the appropriate inference is that without authority to do so, Rialto Capital had its employees act as a purported board.

Another appropriate inference from the facts in evidence is that the Association lacked authority to initiate the action against or engage LLH to collect unpaid assessments from Huggins. (Doc 28-1 at 56, ¶ 3.18). To determine otherwise is to ignore the corporate division between Lennar Corporation and its subsidiaries. LLH advocates to treat the developer entities as the same person:

> Lennar Corporation… is one of the nation's largest homebuilders, a provider of financial services and, through its Rialto Investments segment, an investor in distressed real estate assets… Lennar's SEC filings show that its co-registrants include RL REGI Financial, LLC and Rialto Capital Advisers, LLC. As stated above, RL REGI Financial, LLC became the Declarant in May 2012. Lennar and its related entities have been involved in the Pine Grove subdivision since 2012.

(Doc 27-1 at 7-8). Without any evidence, LLH advocates treatment of Lennar Corporation, Rialto Capital, REGI Financial, and REGI-GA as the same entity, but generally, "[a] person may own all the stock of a corporation and still such individual shareholder and the corporation would, in law, be two separate and distinct persons." *Barnes v. Finnegan Enterprises,* 150 Ga. App. 430 (1979). It follows that two separate corporations, although both owned by the same sole shareholder would be separate and distinct entities." *Jenkins v. Judith Sans Internationale, Inc.*, 175 Ga. App. 171, 171 (1985). This Court weighed in on this question in *United States v. Fid. Capital Corp.*, 888 F.2d 1344 (11th Cir. 1989), wherein a Small Business Administration Act receiver began nonjudicial proceedings to foreclose a mortgage that involved three tightly held companies. The trial court had ignored the corporate form to treat a statement made by the sole owner of a company as the statement of the company, which was reversed.

> The court could not make such a finding on the mere fact that [the owner] owned and controlled [his company], for, under Georgia law, the owner of a corporation and the corporation are treated as separate entities. This is so even though the owner "uses the corporation or controls it to promote [his] own ends." *Boafo v. Hospital Corp. of Am.,* 177 Ga.App. 75, 338 S.E.2d 477, 479 (1985) [string cite]

*Id.* at 1348–49. Thus, even if the evidence were to show that Lennar Corporation is the sole shareholder of Rialto Capital, REGI Financial, and REGI-GA, they still must be treated as separate entities. Given that to be "the Declarant", REGI had to

have the recorded title of Declarant and hold title to property for the purpose of development or sale, it is not enough to show that Rialto Capital intended to develop or resell the lots and that REGI-GA held the title to the Pine Grove property. Because the REGI Financial "board" never had the authority of the Declaration, the clear conditions for exercising powers and duties in the Declaration were not met. As LLH states it, "assessments (or any other association action) [are] invalidated [where] a declarant [has] not appoint[ed] directors." (Doc 16 at 5). The undisputed facts are that REGI Financial did not hold title to any Pine Grove property after 2012, even in the legal fiction sense that it held title under the Security Deeds. Therefore, even if the trial court's inference that the Security Deeds were held for the purpose of development or sale were permitted to stand, REGI Financial was only the Declarant until the Security Deeds were assigned to REGI-GA in March of 2012, which undeniably divested REGI Financial of any title to Pine Grove properties. (Doc 30-1 at 1-2, 4-5, 7-8, 10-11, 13-14, 16-17, 19-20, and 22-23).

## II. The trial court erred by inferring LLH's intent to litigate its action against Huggins and LLH's motivation for dismissing the same.

On the claim that LLH threatened legal action by filing a complaint against Huggins with no intent to litigate, the underlying issue was clearly one of motivation and intent. Generally, credibility determinations rest within the sound

discretion of the fact finder. Indeed, the Supreme Court has instructed that "[d]etermining the weight and credibility of the evidence [including witness testimony] is the special province of the trier of fact" *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.* 456 U.S. 844, 856 (1982). A genuine issue of material fact remains with regard to LLH's intent to litigate the state court action it filed against Huggins.

In *Jeter v. Credit Bureau, Inc.,* this Court overruled a summary judgment granted a debt collector based, as here, on an affidavit regarding intent to take legal action where it was alleged that a debt collector was, "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172 (11th Cir. 1985). Trial courts have recognized that while filing of a debt collection action alone does not violate the FDCPA, it may transgress that act if the debt collector did not intend to take claims to trial to prove their merit. *See*, *e.g*., *Kuria v. Palisades Acquisition XVI, LLC*, 752 F.Supp.2d 1293, 1303 (N.D. Ga. 2010); *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.,* 114 F. Supp. 3d 1342, 1367 (N.D. Ga. 2015) (deeming it "plausible that [] consumers would effectively be coerced into paying a debt that they may or may not actually owe"").

*Jeter* stands for a proposition reiterated in this Circuit time and again that an affidavit regarding intent "is not dispositive" for summary judgment. *Jeter*, 760

F.2d at 1177. **"Cases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment, as are those in which the issues turn on the credibility of the affiants**." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1323 (11th Cir. 2011) *citing Alabama Farm Bureau Mut. Cas. Co.*, 606 F.2d 602, 609 (5th Cir. 1979); see also *Hunt*, 526 U.S. *supra* at 552, 551–52 ("In any event, it was error in this case for the District Court to resolve the disputed fact of motivation at the summary judgment stage."). As established by the Committee Note of the 1963 Amendment to Rule 56,

> Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate. Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented…

In *Jeter,* the district court had relied on the statement of an officer of the debt collector that "defendant did, in fact, intend to recommend legal action", and granted summary judgment. *Jeter*, 760 F.2d at 1175-1176. Such an affidavit "is not by any means dispositive with regard to whether [debt collector] intended to recommend legal action upon the expiration of the five-day period." *Jeter*, 760 F.2d at 1176. While the affidavit would be considered, so would the fact that the debt collector, much like LLH, did not actually follow through on its threat. *Id.* at

1176. Even where "the parties agree[d] on the basic facts in th[e] case, they disagree[d] upon the proper inferences to be drawn from the letters... Such a disagreement, if reasonable, is one for resolution by the trier of fact, not by the court..." *Id*. at 1176.

To attack the allegation that it filed the suit with no intent to litigate, LLH created, filed, and cited to one piece of evidence, the affidavit of Mr. Lueder. (Doc 27-1 at 24-25). Based solely on this Affidavit, the trial court inferred that LLH did not "make the decision to settle the claims against Plaintiff Huggins and dismiss the claims against Marbury and Parson. Rather, because the HOA could no longer afford its $30,000 balance owed to LLH, it instructed LLH to dismiss its lawsuits..." (Doc 48 at 27-28). Despite the absence of a single sentence addressing LLH's intent to litigate at the inception of the action against Huggins, the trial court determined that there was "no genuine dispute as to whether LLH settled and dismissed the claims against plaintiffs merely because of their appearance in the lawsuits" so "no reasonable jury could determine that LLH filed its lawsuits against Plaintiffs without the intent to litigate its claims." (Doc 48 at 27). Respectfully, this inference based on an affidavit that does not even address the question raised is clear error.

Neither LLH's Motion nor Mr. Lueder's Affidavit mention LLH's intent to litigate. (*See* Doc 27-1; and Doc 27-3). In fact, the word "intent" is nowhere to be

found. *Id. passim*. LLH's argument is solely fixed on the Affidavit statement that the HOA had an unpaid legal bill in excess of $30,000 in June of 2019 and that the HOA instructed them to dismiss two cases in litigation, which but failed to reference or put forth any evidence in support. (Doc 27-1at 24; Doc 27-3 at 15).

In fact, the proper inferences must be made in Huggins' favor. LLH claims to have terminated the HOA as a client due to nonpayment, but there is no evidence of when the termination occurred. (Doc 27-3 at 15, ¶ 30). The Affidavit of Mr. Lueder states that LLH ultimately fired the HOA as a client due to the HOA not paying LLH's legal fees." (Doc 36 at 18-19). Yet, prior to an attorney defending Huggins or his neighbors, "the HOA already owed LLH well over $30,000.00 as of June 1, 2019…" (Doc 36 at 19). It was LLH who determined to "fire" the HOA at the time that LLH was made to litigate to prove the claims against Huggins and his neighbors. "As the summer progressed and Plaintiff's attorney, Mr. Webb, began to cause the legal fees to skyrocket (as shown in his own affidavits in the underlying lawsuits), the HOA, rather than LLH, made the decision to not go forward in its cases. LLH then fired the HOA for nonpayment. (Doc 36 at 19). Thus, the undisputed evidence from LLH is that it continued to represent the HOA until Huggins and his neighbors hired counsel and defended the cases, which increased the cost of litigation, directly leading LLH to "fire" the HOA as a client. LLH asked the trial court to make the inferences both that the

HOA made the decision to terminate uninfluenced by LLH who made it clear LLH would no longer be involved with the litigation, and that the proffered affidavit is credible, somehow proving LLH intended to litigate.

Huggins argued and cited to record evidence in support of claims that LLH is a "Litigation Mill" in violation of the 15 U.S.C. § 1692e of the FDCPA and that LLH filed complaints against Pine Grove's homeowners with no intent to prove the allegations therein. (Doc 30 at 13-14). As the movant, LLH never met its burden of proof to show that no genuine issue of material fact existed on this issue so as to shift the burden of proof over to Appellant. (*See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 323; *Clark,* 929 F.2d at 608. Despite this, Huggins directed the trial court to multiple lawsuits filed by LLH in Henry County State Court between October 24, 2018 and November 28, 2018. (Doc 30 at 13; Doc 30-3). It is clear from The documents filed by LLH in the state court cases, as well as in their affidavits and time entries, show that LLH failed to take any action in furtherance of litigation for several months after their initial filing. (*See* Docs 27-3; 30 at 13)

As in *Jeter*, the trial court granted LLH summary judgment as to Appellant's 15 U.S.C. § 1692e claim based solely on a statement in the Affidavit of John Lueder that LLH "did not itself make the decision to settle the claims against Plaintiff Huggins and dismiss the claims against Plaintiff's Huggins and Parson.

Rather, because the HOA could no longer afford its $30,000 balance owed to LLH, it instructed LLH to dismiss its lawsuits against Plaintiffs." (Doc 48 at 28). This statement is by no means dispositive with regard to whether LLH intended to fully litigate the underlying state court lawsuits at the time they were filed, or whether LLH filed the lawsuits in an attempt to get a default judgment or force settlement. Just it was up to the *Jeter* jury to weigh the evidence contradictory evidence on whether the debt collector intended to litigate, it is the jury's place to determine whether LLH intended to follow through on its form complaints.

### III. The trial court erred in putting the burden on Huggins rather than LLH to provide evidence in support of the remaining claims.

On Huggins' remaining claims, it was improper for the trial court to rule against Huggins because "the party seeking summary judgment bears the exacting burden of demonstrating that there is no actual dispute as to any material fact in the case"; "the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly carried its burden". *Impossible Elecs. Techniques, Inc*, 669 F.2d at 1031. Additionally, if a trial court determines to look beyond the evidence presented by the movant pursuant to Local Rule 56.1, it then has the duty to consider all evidence in the record:

> By opting not to deem the defendants' statement of undisputed facts as admitted, however, the court implicitly chose to base its decision

on *all* of the evidentiary materials in the record on summary judgment. *See Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 998 (11th Cir.1992) ("In opposing summary judgment, the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole."); *Tippens v. Celotex Corp.,* 805 F.2d 949, 952 (11th Cir.1986) ("The District Court shall consider all evidence in the record when reviewing a motion for summary judgment— pleadings, depositions, interrogatories, affidavits, etc.—and can only grant summary judgment if *everything* in the record ... demonstrates that no genuine issue of material fact exists.") (internal quotation *1271 marks omitted); *Holtz,* 258 F.3d at 73 (holding that "while a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement") (internal quotation marks and citations omitted).

*Reese*, 527 F.3d at 1270–71. Here, the Court determined to review the record, "The Court has nevertheless reviewed the record..." (Doc 47 at 6). Huggins may avail himself of all facts and justifiable inferences taken as a whole.

The facts construed in Huggins' favor show that LLH violated 15 U.S.C. § 1692d, e, and f by misrepresenting the consumer debt in its enforcement action and seeking unreasonable attorney's fees, by its manner of conducting litigation, and by seeking unmerited charges and administrative fees. "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. § 1692f(1) includes the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount

is *expressly* authorized by the agreement creating the debt or permitted by law. LLH sought attorney's fees of $1,577.00 and costs of $356.96. (Doc 27-2 at ¶ 60). In addition to its costs, LLH sought miscellaneous charges in the amount of $315. (Doc 36 at 20). In response LLH obtained an affidavit from a Bradford Pasquali, stating that the charges were costs incurred by the management company as part of collections. Additionally, while there is no evidence of a board authorizing the same, LLH obtained judgement on an accelerated assessment. (Doc 27-3 at 40). However, this generic affidavit falls short of showing that these amounts were *expressly* authorized, being—really—just another name for administrative fees, and, if true, just goes to establish that LLH violated § 1692e by misrepresenting these collection charges as miscellaneous fees. Additionally, a review of the March 21, 2019 Judgment that LLH obtained without notice of the hearing to Huggins shows that "costs" were already accounted for as $369.15, so the "Misc Charges" are represented as a different item. (Doc 27-3 at 40). However, without illustrating an act taken by a board, LLH failed to show that these amounts were *expressly* authorized.

Unless a Homeowner's Association acts pursuant to the Declaration of Covenants under which it seeks to collect assessments, fees, a homeowner will not be required to pay assessments. See *Hall v. Town Creek Neighborhood Ass'n,* 320 Ga. App. 897, 900 (2013). This concept must logically extend to the collection of

any debts pursuant to a Declaration of Covenants. The Declaration states that its filing "does not and is not intended to submit the Property to the terms of the Georgia Property Owners' Association Act, OCGA § 44–3–220 et seq." See Declaration (Doc 28-1 at 6). In Georgia, under such circumstances, the common law of covenants applies, and a court must apply the usual rules of contract construction:

> Accordingly, in construing those Covenants we apply the common law of covenants. See Georgia Jurisprudence, Property, § 6:80; *Country Greens Village One Owner's Assn. v. Meyers,* 158 Ga.App. 609, 610, 281 S.E.2d 346 (1981). And under that law, the Declaration of Covenants is viewed as a contract; in interpreting that document, therefore, we apply the usual rules of contract construction. *[cite]*

*Hall*, 320 Ga. App. at 899. "Thus, if the language at issue is clear and unambiguous, [a court's] job is simply to apply that language as written." *Id.* citing *Southland Dev. Corp., supra* at 213. In *Hall*, the Georgia Court of Appeals applied the clear and unambiguous language in holding that

> the Association's Bylaws… grant the Declarant the power to appoint and remove members of the board of directors... Neither the Declaration nor the Bylaws, however, state that the Declarant is not obligated to appoint a board or that the Declarant may act in lieu of the board. Thus, it is clear that the Declaration contemplated the creation of a board of directors, as well as the legal and procedural safeguards the creation of such a board would provide to the property owners.

*Id.* "Given that no Board of Directors was ever appointed, there was no body that had the authority to levy the assessments at issue. Under the terms of the Declaration of Covenants, therefore, Hall was not required to pay those assessments." *Id.;* see also *McGee v. Patterson*, 323 Ga. App. 103, 111 (2013) ("[i]mproper elections or the failure to hold elections can strip the acting board members of their authority to act", so the board's actions had no effect.).

LLH shows no record of meetings or resolutions after 2012, and Huggins' neighbor swore that no such meetings occurred in recent history. (Doc 31-1 ¶ 11). The Declaration requires that notice of the meetings be sent to residents, so Huggins would know if they had occurred. (Doc 28-1 at 50, ¶ 2.5). If properly appointed, the Board would still have to operate as a normal HOA Board, of which there is no evidence after 2012. The subject Bylaws require board action to authorize collection of assessments or fees, and to pursue legal actions. (Doc 28-1 at 56-7). Additionally, at Section 3.24, "the Board shall have the power to impose reasonable monetary fines…" (Doc 28-1 at 60). Clearly these acts require a board, so pursuing these collections without specific board approval misrepresented the consumer debt, had the natural consequence to harass, oppress, and abuse Huggins, and included interest, fees, charges, and expenses incidental to the principal obligation which were not expressly provided for the Declaration.

**IV. The trial court erred by making determinations of fact that are the province of the Jury.**

The question of whether LLH's attorney interaction with Huggins' case prior to LLH's filing of a lawsuit against him was adequate is a question of fact for the jury. The purpose of allowing for recovery under § 1692e based on a lack of meaningful attorney involvement is that,

> when presented with a complaint or letter signed by an attorney, an individual debtor is forced to rely on the implicit representation that the attorney has reviewed the case, because the debtor is in no position to know the attorney's specific level of involvement.

*Carter v. CACH, LLC*, No. 1:14-CV-2786-MHC-JKL, 2016 WL 11581050, at *11 (N.D. Ga. Apr. 7, 2016), report and recommendation adopted, No. 1:14-CV-2786-MHC, 2016 WL 11581046 (N.D. Ga. May 20, 2016); s*ee* also *Hanna*, 114 F. Supp. 3d at 1366 ("The least sophisticated consumer is likely to believe when served with a debt collection complaint that a lawyer has reviewed his account and determined that the creditor has a valid claim.").

The trier of fact should make the determination of whether LLH's involvement was enough to indicate that an attorney was actually involved when the form complaint was filed. See *Alabama Farm Bureau*, 606 F.2d at 609 ("'(T)he choice between permissible inferences is for the trier of facts.'…Where a jury is called for, the litigants are entitled to have the jury choose between conflicting inferences from basic facts.").

While not as extreme, the allegations here are of the same nature as *Hanna,* wherein the court found an FDCPA case established where it was alleged that a collection firm's complaints "may have featured the signatures of attorneys," but the lawsuits were in fact "prepared and filed without meaningful attorney involvement" "in either the decision to initiate the lawsuit or in the preparation of the pleadings." *Hanna*, 114 F. Supp. 3d at 1349. Like the instant case, the allegations in *Hanna* were that the decision to draft the complaints, and preparation of the same were left to support staff, "including determining whether a case was 'suit worthy,' determining the alleged principal, interest, and attorneys' fees owed, and actually drafting plaints…" *Id.* The allegation was that the Firm's attorneys gave "only cursory review to" the suits, spending no more than a minute reviewing and signing the pleadings prepared by support staff. *Id.*

In *Carter v. CACH, LLC* the Court stated that *Hanna* "is not the outer limit, factually, of what is actionable" determining that, while a close call, operating a debt collection legal practice in a manner similar to that at issue here presents a question of fact that cannot be summarily adjudged. *Carter, supra* at *13. In *Carter,* legal assistants determined when a suit was ready to file and then assembled the assignment documents, monthly billing statements, and card member agreements associated with each account, merging the information into one of the complaint templates that the attorney had created, and then gave the

attorney a stack of about 20 to 30 complaints roughly every other week. *Id.* at *3. The attorney would review the complaint to "make sure that everything looks like it's generated correctly" and "make sure all the information lines up, and look at the account summary and "stuff on the computer as well", reviewing deadlines and any kind of issue. *Id.* at *3. To verify the amount listed in the complaint, the attorney would "just quickly double-check the amounts, the numbers, and… the account number ... to make sure [the amount] matches up with the charge-off statement." *Id.* at *3. The attorney would then sign and date the complaints. *Id.* at *3.

Like the *Hanna* and *Carter* defendants, LLH has paralegals take all prelitigation actions and draft complaints prior to any attorney involvement of which there is any evidence in the ledger. (Doc 27-3 at 43-44). According to LLH's Attorney's Fees Ledger, paralegals drafted and sent the initial demand letter to Mr. Huggins, prepared a notice of lien, conducted a title search, prepared a follow up collection demand letter, reviewed bankruptcy records, skip traced Mr. Huggins, prepared discovery requests, determined jurisdiction, venue, and service, and determined amounts due, and drafted the complaint, all before any attorney interacted with the file is indicated in the ledger. (Doc. 27-3 at 43-44). The attorney spent just over half an hour reviewing the pleadings, verifying title for ownership,

venue, and service, then reviewing the file and ledger prior to filing the complaint. (Doc 27-3 at 43).

The question of fact should be construed in Huggins' favor that thirty-five minutes is not enough time to determine whether the Board has passed resolutions to authorize the purported miscellaneous charges, or the collection or litigation, and otherwise verify the information provided by the creditor, especially when an attorney is also reviewing the pleadings, verifying title for ownership, venue, and service, then reviewing the file and ledger prior to filing the complaint. (Doc 27-3 at 43). Now, LLH argues that the miscellaneous fees were merely collection fees, but if this is so, then LLH should have verified that fact during an attorney review instead of misrepresenting the collection fees as miscellaneous fees. This actually supports the lack of adequate attorney review argument. The question of meaningful attorney involvement is one for the finder of fact.

## CONCLUSION

The trial court's Order granting summary judgment should be reversed because it failed to apply the appropriate standard on a motion for summary judgment, made impermissible inferences against Huggins, and made determines of fact that are the province of the jury. The Appellant respectfully requests that

this Court reverse the District Court's Order, deny the Motion for Summary Judgment, and remand the matter for further proceedings.

Respectfully submitted this the 30th day of September, 2020.

**SMITH WELCH WEBB & WHITE, LLC**

280 Country Club Dr.         _/s/ Miranda N. Hanley_
Suite 300                    Georgia Bar No. 451274
Stockbridge, GA 30281        Attorney for Appellant
(770) 389-4864
(770) 389-5193 facsimile
mhanley@smithwelchlaw.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 11,986 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

This 30th day of September, 2020.

**SMITH WELCH
WEBB & WHITE, LLC**
*/s/ Miranda N. Hanley*
Miranda N. Hanley
Georgia Bar No.  451274
Attorney for Appellant

# CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing document using the Court's CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

This 30th day of September, 2020.

**SMITH WELCH**
**WEBB & WHITE, LLC**
*/s/ Miranda N. Hanley*
Miranda N. Hanley
Georgia Bar No.  451274
Attorney for Appellant